UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NATHANIEL CHRISTOPHER,

        Petitioner,

- against -

WILLIAM J. CONNOLLY,

        Respondent.
------------------------------------------------------------X

MEMORANDUM AND ORDER
06-CV-1575 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

    Pending before this Court is petitioner Nathaniel Christopher's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner seeks relief from his September 10, 2003 conviction following a jury trial in the New York State Supreme Court, Queens County, on two counts of robbery in the first degree under New York Penal Law ("N.Y.P.L.") § 160.15, and one count each of robbery in the second degree under N.Y.P.L. § 160.10, criminal possession of stolen property in the fourth degree N.Y.P.L. § 165.45, and criminal possession of a weapon in the fourth degree N.Y.P.L. § 265.01. (Trial Tr. (Doc. No. 7) at 1312–16.) He was sentenced to concurrent prison terms of ten years for the robbery convictions, two to four years for possession of stolen property, and one year for possession of a weapon. (Sentencing Tr. (Doc. No. 7) at 34 ("S. Tr.").)

    Petitioner asserts three grounds for habeas relief: (1) police officers violated petitioner's Fourth Amendment rights when they stopped and searched him after the robbery, (2) the verdict was against the weight of the evidence and the prosecutor violated petitioner's Sixth Amendment

---

[1] It appears that petitioner has been released from prison; however, because petitioner is currently on parole, the Court considers him to be in "custody" for purposes of his habeas challenge. *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (holding that a prisoner on parole subject to conditions significantly restraining his freedom is in "custody" of parole board for purposes of habeas challenge).

1

right to a fair trial by knowingly using perjured testimony, and (3) the prosecutor violated petitioner's Sixth Amendment right to a fair trial by making improper and unduly prejudicial remarks during his summation.  (Reply to Opp. to Habeas Pet. (Doc. No. 10) at 1–14.)

For the reasons set forth below, the petition is DENIED in its entirety.

## BACKGROUND

### I. Robbery And Arrest

Petitioner's convictions arose from the robbery of Kenneth Woods, a delivery truck driver for whom petitioner had previously worked.  (Trial Tr. 984–88.)  Woods testified that during his last delivery of the day on February 5, 2003 at 10:15 a.m. in Glendale, Queens, he was hit in the head with a gun, threatened with a box cutter, and robbed of $1,996 in cash.  (*Id*. at 996–1003, 1046.)  After the assailants ran away, Woods immediately called 911 and told the operator that he had just been robbed by "two black males" who were "armed with a gun and a knife" and that "one of them had on a black leather . . . long jacket with a ski cap, and the other one had on . . . a black bubbly jacket with a ski cap."  (*Id*. at 1005–06.)

At approximately 10:25 a.m. on February 5, 2003, Lieutenant Thomas Kelly and Officer Kenwen Lee Chong, who were on vehicular patrol, received a radio report of the robbery and decided to canvass the area to look for the perpetrators, one of whom was wearing a black leather trench coat.  (Trial Tr. 724–26, 798–800, 823; *see also Wade/Mapp* Hr'g Tr. (Doc. No. 7) at 9–10, 47 ("H. Tr.").)  About ten blocks from where the robbery took place, the officers saw two black men, petitioner and his co-defendant Jackie Dewese, walking on Myrtle Avenue.  (*Id*. at 726–30; *see also* H. Tr. 33.)  These were first black men the officers had seen since beginning their canvass, and one man was wearing a black leather trench coat.  (*Id*.)  As their patrol car

advanced towards these two men, Dewese fled the scene.  (*Id*. at 810–13; *see also* H. Tr. 11–12, 34–38.)

The officers stopped the petitioner, searched him, and found two box cutters on petitioner's person.  (Trial Tr. 730–32, 833.)  Police arrested Dewese moments later and recovered $1,996 from the right pocket of Dewese's trench coat.  (*Id*. at 734)  Woods was brought to the locations where petitioner and Dewese were arrested, and Woods separately identified both petitioner and Dewese as the perpetrators of the robbery.  (*Id*. at 732, 734–35, 815–17.)

### II. Procedural History

#### A. Suppression Hearing

Petitioner moved pre-trial to suppress the box cutters and Woods's identification of petitioner as the fruit of an unlawful Forth Amendment seizure.  (H. Tr. 73–75.)  In support, defense counsel argued that because the radioed descriptions of the suspects was "vague," "general," and "ambiguous" (*id.* at 71), the officers lacked probable cause "to restrain [petitioner] and engage [petitioner] in detention of personal liberty or restraining [petitioner's] personal liberty."  (*Id*. at 73–74.)  The state court denied the motion, holding that the officers had the "right to stop and detain [petitioner] at the particular location" for a show-up identification under *People v. Hicks*, 68 N.Y.2d 234, 239 (1986).  (H. Tr. 80–82, 85–87.)  The state court further noted that "the flight that is alleged to have occurred by [ ] Dewese . . . would give the officer further right to detain [ ] Christopher at the location under *Hicks* in order to have the complainant come to the particular location . . . [as] [a]ll of this happened within an eight to ten block radius . . . of the alleged crime and . . . under ten minutes from the initial report of the robbery."  (*Id*. at 85.)  Additionally, because Woods identified petitioner as one of his assailants, the state court held that "[p]robable cause exist[ed]," that the "[s]earch incident to the arrest

3

[was] proper," and that "[r]ecovery of the box cutters . . . [was] proper." (*Id.* at 86–87.) The state court thus denied petitioner's motion to suppress. (*Id.* at 87.)

### B. Trial

Petitioner's trial commenced on August 25, 2003 and lasted eight days. (Trial Tr. 1.) Woods testified about the robbery, his call to 911, and his description of the perpetrators. (*See id.* at 1002–08.) He also testified that not only had he positively identified petitioner as one of the robbers when the police apprehended petitioner approximately ten blocks away from the scene of the crime, but that he knew petitioner because they had recently worked together delivering milk. (*Id.* at 983–91, 1007–08.) Additionally, Woods identified one of the box cutters Officer Lee Chong recovered from petitioner's person was the weapon Dewese used against Woods during the robbery. (*Id.* at 730–32, 1013.)

The defendants' case focused on discrepancies in key witnesses' testimonies. (*See, e.g., id.* at 1044–47, 1062–63, 1067–70, 1128–31, 1137–39, 1146.) Petitioner did not testify. The defendants also elicited testimony that petitioner had been compliant when Lieutenant Kelly and Officer Lee Chong stopped him for questioning. (*Id.* at 811–13.)

At the conclusion of testimony, the petitioner moved for, and the trial court denied, a motion for mistrial based on various inconsistent statements made by the prosecution's witnesses (*id.* at 1158–61), and an acquittal based on the prosecution's inability to prove beyond a doubt his involvement in the robbery. (*Id.* at 1163–66.)

### C. Conviction and Sentencing

On October 30, 2003, a jury convicted petitioner of two counts of robbery in the first degree, one count of robbery in the second degree, one count of possession of stolen property, and one count of possession of a weapon. (Trial Tr. 1314.) The trial court sentenced petitioner

4

to concurrent prison terms of ten years for each count of robbery, two to four years for possession of stolen property, and one year for possession of a weapon. (S. Tr. 34.)

### D. Direct Appeal

Petitioner appealed to the Supreme Court of the State of New York, Appellate Division, Second Department on two grounds: (1) the police who forcibly stopped him lacked reasonable suspicion for the stop, which violated petitioner's Fourth and Fourteenth Amendment rights; and (2) the prosecutor violated petitioner's Sixth Amendment right to a fair trial by shifting the burden of proof and attacking petitioner's failure to testify, mischaracterizing and denigrating the defense, referring to facts not in the record, and ignoring the court's rulings on these comments. (Pet'r's App. Div. Br. (Doc. No. 7) at 21–26, 27–41.)

On August 8, 2005, the Appellate Division affirmed petitioner's conviction in a written opinion holding that (1) police lawfully stopped petitioner for questioning where he and his co-defendant, walking together, fit the victim's description of the robbers, and Lieutenant Kelly and Officer Lee Chong observed them in close proximity to the crime scene shortly after the crime occurred; and (2) the remainder of petitioner's claims were "either unpreserved for appellate review or without merit." *People v. Christopher*, 800 N.Y.S.2d 204, 204 (2d Dep't 2005).

Petitioner sought leave to appeal and was denied by the Court of Appeals on September 30, 2005. *People v. Christopher*, 5 N.Y.3d 827 (2005).

### III. Habeas Petition

On April 3, 2006, petitioner timely filed in this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) On July 12, 2006, respondent filed an affidavit and memorandum of law in opposition to the petition. (Doc. No. 5.) On September 11, 2006, petitioner filed an affidavit in response to respondent's opposition filing. (Doc. No. 10.)

5

Finally, on November 9, 2006, respondent filed a supplemental affidavit and memorandum of law in opposition to the petition. (Doc. No. 12.)

## APPLICABLE LAW

In deciding a federal habeas corpus petition, the Court must apply the standard of review set forth by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 ("AEDPA"). AEDPA requires a rigorous standard of review with regard to petitions filed by state prisoners. *See Williams v. Taylor*, 529 U.S. 362, 402–03 (2000). Under AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Though the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are analyzed independently, both limit the source of the "clearly established law" to the jurisprudence of the Supreme Court. *Williams*, 529 U.S. at 404–05, 412; *see also Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005).

A state court "adjudicates a state prisoner's federal claim on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (citation and internal quotation marks omitted). "When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Id*. This is because "federal courts recognize a conclusive presumption that, when presented with an express

6

federal claim, a state court's decision rests principally upon an application of federal law even absent any express reference to federal authority." *Reznikov v. David*, No. 05 Civ. 1006, 2009 WL 424742, at *3 (E.D.N.Y. 2009) (citing *Sellan*, 261 F.3d at 314).

The Supreme Court has noted that a state court decision will be "contrary to" established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if a state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405–06.

Further, the Supreme Court has held that, with respect to the "unreasonable application" clause, a federal court may grant a petitioner's writ of habeas corpus "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 413. The state court's application, however, must be "objectively unreasonable," *id*. at 409–10, a "higher threshold" than "incorrect." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Moreover, if a federal court "finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." *Howard*, 406 F.3d at 122 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 629–30 (1993)).

AEDPA requires that federal courts treat state court adjudication with great deference. *Brown v. Artuz*, 283 F.3d 492, 500 (2d Cir. 2002). This deference is warranted "even if the state court decision does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan*, 261 F.3d at 312. Moreover, this standard extends to factual determinations made by the state court: "a determination of a factual issue made by a State court shall be presumed to be

7

correct." 28 U.S.C. § 2254(e)(1). Petitioner can only rebut this presumption of correctness with clear and convincing evidence. *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003).

The "unreasonable determination" inquiry under § 2254(d)(2) has also been elucidated by the Supreme Court: "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). A state court's application of federal law must be "objectively unreasonable." *Id.* at 409. This is even more stringent a requirement than clear error, which can be distinguished from unreasonableness for the purposes of this inquiry. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Indeed, the Second Circuit has required "some increment of incorrectness beyond error," *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000), but noting that though "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I. Fourth Amendment Claim

Petitioner alleges that because the police lacked reasonable suspicion to stop him initially, the stop violated his Fourth Amendment protection against unreasonable search and seizure. (Doc. No. 10 at 2, 4.) This, petitioner contends, renders inadmissible the evidence stemming from that stop, specifically the box cutters Officer Lee Chong found on petitioner and Woods's show-up identification of petitioner as one of the robbers. (*Id.* at 4–5.) Respondent argues that *Stone v. Powell*, 428 U.S. 465 (1976), bars this Court from reviewing petitioner's Fourth Amendment claim. (Supp. Mem. of Law in Opp. to Habeas Pet. (Doc. No. 12) at 8–11.)

8

This Court agrees with respondent. In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494–95; *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) (en banc), *cert. denied*, 434 U.S. 1038 (1978) (holding that a Fourth Amendment claim may not be considered by a federal habeas corpus court if the state has provided an opportunity fully and fairly to litigate it); *see also Capellan v. Riley*, 975 F.2d 67, 70 n. 1 (2d Cir. 1992) (noting that New York mechanism for litigating Fourth Amendment claims is "facially adequate").

Here, New York State provided, and petitioner availed himself of, state corrective processes to argue his Fourth Amendment claim. First, the state court held a pre-trial suppression hearing, at which petitioner moved to suppress both the box cutters and Woods's identification testimony as the fruits of an illegal arrest. (H. Tr. 71–74.) The state court rejected petitioner's claim, finding that the police had the right to approach petitioner to request information based on Woods's description of the robbers and the closeness of the stop both in time and proximity to the scene of the crime. (*Id*. at 82–87.) Moreover, the state court held that Lieutenant Kelly and Officer Lee Chong had the right to detain petitioner for a show-up identification and the police had probable cause to search and arrest petitioner. (*Id*.)

Petitioner further availed himself of state procedures to challenge the admission of this evidence on direct appeal, arguing that the lower court had erred in denying his motion to suppress the identification testimony and the physical evidence because the prosecution failed to demonstrate that petitioner's seizure was justified. (Pet'r's App. Div. Br. (Doc. No. 7) at 21–26.)

9

The Appellate Division affirmed the denial of the suppression motion. *People v. Christopher*, 800 N.Y.S.2d 204, 204 (2d Dep't 2005), *lv denied*, 837 N.E.2d 740, 740 (2005).

Because New York State has provided petitioner with a full and fair opportunity to litigate his Fourth Amendment claim, petitioner is now barred from raising this claim in a habeas corpus proceeding in federal court.

## II. Verdict Against The Weight Of The Evidence and Use of Alleged Perjured Testimony

Petitioner claims that the verdict was against the weight of the evidence and that the prosecutor knowingly used perjured testimony during the trial. (Doc. No. 10 at 2–4, 6–8.) The bases of petitioner's wholly record-based claims, however, focus on mere inconsistencies in the testimonies of various prosecution witnesses. (*Id.*) Moreover, to the extent that petitioner claims that the verdict was against the weight of the evidence based on the testimonial inconsistencies, that claim is "an error of state law, for which habeas review is not available." *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002); *see also Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal."); *Frazier v. New York*, 187 F. Supp. 2d 102, 109–10 (S.D.N.Y. 2002) ("[A] habeas court must defer to the assessments of the weight of the evidence and credibility of the witnesses that were made by the jury.").

Even if petitioner's argument is construed as claiming the prosecutor knowingly used perjured testimony during the trial, that claim is unexhausted and unreviewable. At trial, defense counsel moved for a mistrial based on these inconsistencies, which the trial court denied (Trial Tr. 1158–61), and petitioner did not subsequently present this claim for consideration by the Appellate Division or by the Court of Appeals.

10

Pursuant to AEDPA, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see also Rose v. Lundy*, 455 U.S. 509, 515–16, 518 (1982) ("The exhaustion doctrine existed long before its codification [in 28 U.S.C. § 2254] by Congress in 1948" and is "designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."). To satisfy the exhaustion requirement, a petitioner must first "fairly present[] to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981). A federal habeas petitioner may "fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution" by stating his constitutional claim clearly enough so that a court can easily discern its basis. *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc). The petitioner must employ "all available mechanisms to secure appellate review" of the state court's denial of his claim. 28 U.S.C. § 2254(c).

In this case, petitioner unjustifiably failed to present his wholly record-based claim, regarding inconsistencies in the testimonies of various prosecution witnesses, to the Appellate Division. Because petitioner neglected to raise his claim in his appellate brief, the Appellate Division never considered this claim. Therefore, this claim remains unexhausted.

However, because petitioner has already used his one appeal to the New York Court of Appeals to which he is entitled and a motion to vacate judgment pursuant to N.Y. Crim. Proc.

Law § 440.10 would be futile,[2] this claim is "deemed exhausted" but procedurally barred from federal habeas review. *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Spence v. Superintendent*, 219 F.3d 162, 170 (2d Cir. 2000) ("Because [petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted.").

Nonetheless, "[w]here a [petitioner] has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the [petitioner] can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *DiSimone v. Phillips*, 461 F.3d 181 (2d Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Petitioner has alleged no cause or prejudice, and does not argue that he is actually innocent.

Accordingly, petitioner's claim is procedurally defaulted, and this Court is precluded from reviewing it.

### III.   Prosecutor's Improper Remarks

Petitioner argues that his "constitutional rights were violated" by the prosecutor's improper remarks during summation because "the prosecutor shifted the burden of proof and attacked [petitioner]'s failure to testify by inter alia repeatedly asserting that the [petitioner] was a black man and had proffered no reason for being in an all white neighborhood." (Doc. No. 10 at 1–2.) The Appellate Division held that this claim was "either unpreserved for appellate review or without merit" *People v. Christopher*, 800 N.Y.S.2d 204, 205 (2d Dep't 2005), *lv denied*, 837 N.E.2d 740 (2005); *see also* (Pet'r's App. Div. Br. (Doc. No. 7) at 27–41). Having presented his

---

[2] "[T]he court must deny a motion to vacate a judgment when: . . . (c) [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]" N.Y. Crim. Proc. Law § 440.10(2)(c).

12

claim regarding the prosecutor's improper remarks during summation to the highest court of the state, petitioner has properly exhausted this claim and it is properly presented for habeas review.

Generally, "[a] criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). In reviewing a claim of prosecutorial misconduct with regard to a writ of habeas corpus, the appropriate standard of review is "a narrow one of due process, and not the broad exercise of supervisory power." *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir.1990) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). The alleged prosecutorial misconduct must have caused the defendant "substantial prejudice" so that it infected the entire trial with fundamental unfairness and the resulting conviction was a denial of due process. *Floyd*, 907 F.2d at 355; *see also Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (noting that the comments must "constitute[ ] more than mere trial error, and [be] instead so egregious as to violate the defendant's due process rights"). In the Second Circuit, courts consider three factors in determining whether a prosecutor's comments caused the defendant substantial prejudice: "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam).

A review of the record here indicates that the challenged comments did not so infect the trial with unfairness that petitioner was denied due process of the law. Petitioner's main contentions are that the prosecutor's comments during his summation improperly shifted the

13

burden of proof and attacked petitioner's failure to testify.[3] (*See* Doc. No. 10 at 1–2, 5, 7, 10, 12.) A careful examination of the prosecutor's summation indicates that many of the comments petitioner complains of were fair argument, e.g. asking the jury to take petitioner's arguments to their "logical conclusion" and arguing that petitioner's theory of the case, that he was mistakenly stopped by the police and mistakenly identified by Woods, was implausible because it was too coincidental that petitioner just happened to be walking down the street minutes after, and just blocks away from where his former employer was robbed. (*See* Trial Tr. 1229–39.) As to other comments about which petitioner now complains, defense counsel promptly objected to those remarks and the trial court properly sustained those objections. (*See* Trial Tr. 1215, 1225–27, 1230–33.) Additionally, the trial court provided multiple curative statements during the course of the prosecutor's summation – informing the jury that there is no law concerning people who lie, reminding the jury that their recollection of the evidence controls, reminding the jury that petitioner bore no burden of proof, and instructing the jury that "it is not against the law to be in Glendale." (Trial Tr. 1227, 1231, 1233, 1235). As such, not only are the prosecutor's comments not egregious when taken in context, any errant remark made during the prosecutor's summation was adequately cured by the trial court's sustaining of defense counsel's objections and the trial court's curative statements.

Moreover, the strong evidence of guilt adduced at trial – petitioner was arrested within ten blocks of the scene of the crime and within approximately ten minutes of the robbery, that petitioner and Dewese matched the description of the perpetrators, that Woods positively identified petitioner and Dewese at the time of their arrest, that Woods had previously worked with petitioner, that the box cutters used in the robbery were found in petitioner's possession at

---

[3] Notably, defense counsel failed to object to many of the other comments petitioner now complains of (*see* Trial Tr. 1221, 1224, 1228, 1230–38). *See Malley v. Manson*, 547 F.2d 25, 28 (2d Cir. 1976) ("The absence of contemporaneous objections or requests for cautionary instructions are factors to be taken into consideration.").

14

the time of his arrest, and that Dewese had the exact amount of money stolen from Woods in his pocket – is sufficient to overcome any unfairness arising from any improper remarks on the prosecutor's summation. *See Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (finding that identification of defendant by two eyewitnesses and arrest of defendant in vehicle that also contained money stolen from the scene of the crime constituted evidence sufficiently strong to overcome unfairness wrought by prosecutor's improper remarks). Therefore, the comments petitioner complains of did not cause petitioner substantial prejudice and petitioner was not denied due process.

 Furthermore, given the strength of the evidence against petitioner as described above, none of the prosecutor's comments, even if improper, could have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993); *see also Freeman v. Kadien*, 684 F.3d 30, 34 (2d Cir. 2012) ("[A] federal habeas court will assess harmlessness by considering the 'prejudicial impact' of the federal error 'under the 'substantial and injurious effect' standard . . . whether or not the state appellate court recognized the error." (citing *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007)).

 Accordingly, the state court's decision concerning petitioner's challenge to the prosecutor's summation was not contrary to or an unreasonable application of clearly established federal law and petitioner's claim does not warrant habeas relief.

## CONCLUSION

Accordingly, it is hereby ORDERED that petitioner's habeas corpus petition (Doc. No. 1) is DENIED in its entirety, and his petition is DISMISSED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to enter judgment, send a copy of the Judgment and this Memorandum and Order to petitioner, and close the case.

SO ORDERED.

Dated: Brooklyn, New York
       March 28, 2013

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge